**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA

    Plaintiff,

    v.

COMMISSIONER OF CORRECTIONS, et al.

    Defendants.

Civil Action No.:  ELH-21-1656

**MEMORANDUM OPINION**

        Donald R. Pevia, a Maryland prisoner, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. ECF 1 (Complaint). Plaintiff names as defendants Commissioner of Corrections, Assistant Commissioner Frank Bishop, and Officers Eric Muir, Christine Reynolds, Carolyn Price, and Sergeant Anthony Koelker.[1] Pevia alleges that while he was housed at North Branch Correctional Institution ("NBCI") he was improperly exposed to a chemical agent and thereafter was denied a decontamination shower. *Id.*  In plaintiff's view, the amount of "mace" that was used was excessive.  ECF 1 at 5.  The suit is accompanied by exhibits, docketed collectively at ECF 1-2.

    The defendants have moved to dismiss or for summary judgment (ECF 9), supported by a memorandum (ECF 9-1) (collectively, the "Motion") and exhibits. Pevia opposes the Motion. ECF 14; ECF 19. And, he has submitted an Affidavit with his response.

    No hearing is necessary to address the Motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, I shall grant the Motion.

---

[1] The Clerk shall amend the docket to reflect the names and titles of the defendants.

# I.     Factual Background

## A.     Pevia's Allegations

On March 3, 2020, plaintiff was in the dayroom at NBCI for his recreation period. ECF 1 at 4. When the doors opened to permit inmates to exit the dayroom, another inmate ran into the dayroom and began to assault Inmate Cooper. *Id*. Plaintiff saw defendant Muir run toward the dayroom with his fog can out and he tried to cover himself, anticipating that a chemical agent would be sprayed into the dayroom. *Id*. Muir opened the slot in the back dayroom door and, without any command to the inmates to stop fighting, began to spray the two inmates who were fighting. *Id*. Defendant Reynolds then arrived, opened the slot in the front dayroom door, and, without warning, sprayed pepper spray into the day room. *Id.*  Then, Defendant Koelker arrived and "took over for Reynolds", also spraying pepper spray into the dayroom. *Id.*

Plaintiff states that he and other inmates were hit with the chemical agent, causing them to choke, some to the point of vomiting. *Id.*  He also claims that their skin was burning. *Id.*  Pevia recalls that he and the other inmates "crawl[ed] over top of each other like crabs in a pot" to try to escape the chemical agent. *Id.* at 5.

The two inmates who had been fighting had stopped and were "secured" at the door slots. *Id.*  After the inmates were secured, the dayroom doors opened and plaintiff ran out of the room. *Id.*  Using his shirt, which he had wet in a bucket, he tried to cool his skin. *Id.*  Plaintiff was patted down and "forced to lock in his cell with his cell mate . . . ." *Id.*

Approximately 45 minutes later, defendant Price made rounds on the tier. *Id.* Plaintiff asked if he could have a shower.  But, Price declined his request, stating that he was not involved in the altercation and therefore was not in need of a shower. *Id.*  Plaintiff sought to put his contaminated clothes out of his cell to be washed, but that request was denied by Reynolds. *Id.*

Plaintiff alleges that he and his cellmate stripped in their cell and took a "bird bath" in the sink, one at a time, in an effort to wash off the pepper spray. *Id.*  In his view, this was not a good alterative as the spray was mostly on his back, shoulders, and the back of his head. *Id.* Because Pevia was afraid of contaminating his mattress, plaintiff slept on his steel bunk.  ECF 1 at 6.

Plaintiff filed a timely administrative remedy procedure complaint ("ARP") regarding the incident.  ECF 1-2. Thereafter, a contested hearing was heard by an administrative law judge ("ALJ") at the Office of Administrative Hearings, with testimony taken from plaintiff.  ECF 1-2 at 16-29. The ALJ determined that defendants directed the spray toward the fighting inmates and only the amount of force necessary to quell the fight was utilized. *Id.* at 24-25. Additionally, the ALJ found that plaintiff was not offered a decontamination shower but, had he asked for one, it would have been provided. *Id.* at 25. Moreover, the ALJ determined that plaintiff was able to wash the chemical agent from his body utilizing the sink in his cell and plaintiff was not entitled to relief. *Id.* at 28.

Plaintiff now seeks declarative and injunctive relief as well as compensatory and punitive damages. *Id.* at 7-8.

### B.    Defendants' Response

On March 3, 2020, at approximately 6:47 p.m., inmate Robert Hilton left the shower and rushed into the dayroom, attacking inmate Cooper with a homemade weapon. ECF 9-2 at 1, ¶ 4 (White Decl.); ECF 9-2 at 6-9, 23, 37, 53 (attachments); ECF 9-3 (surveillance video) at 18:46:48:07-18:47:50).[2]  Defendant Reynolds, who witnessed the altercation, announced a "10-10" (inmate on inmate fight) and waited for assistance. ECF 9-2 at 6, 23.  Muir and Koelker, along with several other officers, responded to the dayroom. *Id.*; ECF 9-3 at  18:47:28.  Muir and Koelker

---

[2] The video is filed separately and is not available on CM/ECF.

also directed the inmates to stop fighting and separate but the inmates did not comply and continued to fight.  ECF 9-2 at 6, 17-18, 21-22.

Muir deployed pepper spray through the slot in the door toward the two inmates, but it had no effect.  *Id*.; ECF 9-3 at 18:47:32.  The inmates continued to fight. ECF 9-2 at 6 and ECF-9-3 at 18:47:32-18:-47:39.  Muir and Koelker sprayed additional pepper spray toward the two inmates. ECF 9-2 at 6; ECF 9-3 at 18:47:38.  However, the pepper spray was not aimed at plaintiff or any of the other inmates in the dayroom. ECF 9-2 at 6; ECF 9-3. While the inmates fought and officers used pepper spray to stop the fight, plaintiff remained on the opposite side of the dayroom along with several inmates who all appeared, from the video, to be attempting to avoid exposure to the spray.  ECF 1-2; ECF 9-3 at 18:47:34-37.  Plaintiff removed his shirt to cover his face and turned toward the wall.  ECF 1-2; ECF 9-3 at 18:48:13.

Plaintiff's back and neck were exposed to the pepper spray.  ECF 9-3 at 18:47:32.  Once the fighting inmates were subdued and the dayroom doors opened, plaintiff left the dayroom while wiping his face with his shirt, and returned to his cell.  ECF 9-3 at 18:49:29-end.

On March 10, 2020, plaintiff was seen for nurse sick call. ECF 9-4 at 2. He declined to be treated, reporting that his symptoms had resolved.  ECF 9-4 at 2-3.

The video evidence demonstrates that the entire altercation lasted approximately one minute.  It comports with the reports of correctional staffs concerning the incident. ECF 9-3.

Bishop was not the Warden of NBCI at the time of the incident.  He retired on December 6, 2019. ECF 9-2 at 1, ¶ 2.

## II.    Legal Standards

### A.

Plaintiff's claims are predicated on 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty.*

*Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  Thus, § 1983 requires a showing of personal fault based upon a defendant's own conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  In other words, there is no respondeat superior liability under § 1983.

### B.

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See*

*Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC,* 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

8

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Plaintiff filed a Motion for Production of Documents and Discovery. ECF 17. He sought: (1) a copy of defendants' entire Use of Force Manual; (2) "ACA standards 4-4090; 4-4281"; and (3) "any and all documents regarding decontamination showers." *Id.* In support of his Motion, plaintiff stated that he needed the requested information because the documents contain "specific requirements and protocols defendants must abide by" and may contain "additional information beneficial to plaintiff." *Id.* In denying the motion (ECF 20), I noted that plaintiff did not explain why he needed the information to respond to the Motion. *Id.* at 3. Compare *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019).

Accordingly, I am satisfied that it is appropriate to address the Motion as a motion to dismiss for certain defendants, and as one for summary judgment as to others, as this will facilitate resolution of this case. In doing so, I am mindful that Pevia is self-represented. Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).

However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).  Moreover, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

## C.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019);  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

11

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-05; *Weil*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Simply put, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 684; *Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Harvey v. Cable News Network, Inc.*, ___ F.4th ___, 2022 WL 4006939 at *6 (4th Cir. Sept. 2, 2022); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 153, 208 (4th Cir. 2017); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  But, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of*

14

*Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167; *see United States of America English Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, 2021 WL 316267, at *2 (4th Cir. July 27, 2021) (per curiam).  Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.*  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goines*, 822 F.3d at 166; *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines,* 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights

asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Further, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

## D.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat a summary judgment motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Indeed, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). In other words, "the mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

Notably, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).  Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The defense submitted video footage of the incident, captured on four NBCI cameras.  The video footage, like other evidence or exhibits, is construed in the light most favorable to plaintiff, as the nonmovant.  *See Brooks*, 924 F.3d at 111.  In *Scott v. Harris,* 550 U.S. 372, 380 (2007), a summary judgment case, the Supreme Court said that, when "opposing parties tell two different stories," one of which is blatantly contradicted by video evidence in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts . . . ."  Rather, a court should "view[] the facts in the light depicted by the videotape."  *Id.*; *see also Sawyer v. Asbury*, 537 F. App'x. 283, 291 (4th Cir. 2013).

In *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011), a summary judgment case, the Court observed that the principle articulated in *Scott* does not license a court to reject one side's account as a matter of law if the "documentary evidence, such as a video," merely

18

"offers *some* support for [the other side's] version of events." *Id.* at 276 (emphasis in original).
Rather, the video controls only where it "'blatantly contradict[s]'" one side's testimonial account.
*Id.* (quoting *Scott*, 550 U.S. at 380). But, "[i]ncontrovertible evidence relied on by the moving
party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the
court" when resolving a summary judgment motion "if it so utterly discredits the opposing party's
version that no reasonable juror could fail to believe the version advanced by the moving party."
*Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (applying *Scott* in context of motion for
judgment as a matter of law).

### III.     Eighth Amendment – Use of Force

### A.

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue
of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,*
428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,*
825 F.3d 206, 218 (4th Cir. 2016).   Notably, it "proscribes more than physically barbarous
punishments." *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized
standards, humanity, and decency . . .'"  *Id.* (citation omitted).  Thus, the Eighth Amendment
"protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v.
Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the
Constitution imposes upon it a corresponding duty to assume some responsibility for his safety
and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d
327, 338-39 (4th Cir. 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

"In assessing a claim of excessive force, courts ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Lombardo v. City of St. Louis, Missouri*, ___ U.S. ___, 141 S. Ct. 2239, 2241 (2021) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (some internal quotation marks omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Notably, "the inquiry 'requires careful attention to the facts and circumstances of each particular case.'" *Lombardo*, 141 S. Ct. at 221 (quoting *Graham*, 490 U.S. at 396).

A prisoner's Eighth Amendment claim of excessive force involves both an objective and a subjective component. *Brooks*, 924 F.3d at 112. The objective component asks whether the force was sufficiently serious to state a claim. *Id.* But, this "is not a high bar, requiring only something more than '*de minimis*' force." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). The subjective component asks whether the officer "'acted with a sufficiently culpable state of mind.'" *Brooks*, 924 F.3d at 112 (citation omitted). And, "this is a demanding standard . . . ." *Id.* Notably, the state of mind is one of "'wantonness in the infliction of pain.'" *Id.* at 112-13 (quoting *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)).

Whether the force used by a prison official was wanton is determined by inquiring if the "'force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson*, 503 U. S. at 6 (citation omitted; some quotation marks omitted). Several factors are pertinent. The court must consider the need for the application of

force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made by prison officials to temper the severity of their response. *Lombardo*, 141 S. Ct. at 2241; *Kingsley*, 576 U.S. at 397;  *Whitley*, 475 U.S. at 321.

A corrections officer acts in a "'good faith effort to maintain or restore discipline,'" *i.e.*, with "a permissible motive," when confronting "immediate risks to physical safety" and when attempting to "'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 6-7).  In contrast, the use of force "to punish an inmate for intransigence or to retaliate for insubordination" would "cross the line into an impermissible motive." *Brooks*, 924 F.3d at 113.

The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins*, 559 U.S. at 38; *see Ussery v. Mansfield*, 786 F.3d 332, 336 (4th Cir. 2015).  Rather, the extent of injury is one factor indicative of whether the force was necessary in a particular situation. But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner "had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

Here, chemical agents were used by prison staff to break up a physical altercation between two inmates.  The altercation occurred during a recreational period, in the presence of other inmates, including Pevia.

What Judge Chasanow said in *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 Fed. Appx. 243 (4th Cir. 2016), is apt here:

> In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted).  The use of pepper spray is not "per se a cruel and unusual

punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D.Md.1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed.Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

## B.     Use of Chemical Agent in the Dayroom

The undisputed facts establish that, during a recreation period at NBCI, two inmates engaged in a fight in the dayroom. At the time, plaintiff and several other inmates were in the room for their recreation period. When Correctional Officer Reynolds became aware of the fight he immediately called for back-up. As additional officers arrived on the scene, defendant Muir opened the door slot, directed the inmates to stop fighting, and then deployed pepper spray at the inmates who were fighting. Of course, because the inmates were moving, it was not necessarily

easy to strike them.  Moreover, the use of a substance like pepper spray, by its nature, could have a spillover effect on others in their vicinity.

Plaintiff, along with the other inmates not engaged in the fight, all moved away from the fight.  Many of them, including plaintiff, made efforts to shield themselves from the effects of the pepper spray.

The inmates did not stop fighting.  Defendant Koelker opened the slot in another door to the dayroom and also deployed a chemical agent in the direction of the inmates who were fighting. When the inmates still refused to desist, Muir sprayed yet another burst of pepper spray at those inmates. The two inmates stopped their fighting, consented to be handcuffed, and were removed from the dayroom. The other inmates were then permitted to leave the dayroom as well.

The incident undoubtedly seemed as if it lasted a long time.  But, the video reflects that the two inmates were brought under control rather quickly.  It is also clear from the video evidence that a number of inmates caught in the dayroom during the use of chemical agents were adversely affected by exposure.  Notably, there is no indication that the amount of force that was used was more than necessary to stop the attack of one inmate on another and to secure the safety and security of all inmates in the dayroom.  And, even if an officer used more pepper spray than was needed, there is not a shred of evidence that the officer did so wantonly or maliciously.  It seems obvious that the officers merely sought to quell a dangerous situation.

Plaintiff maintains that defendants failed to order the fighting inmates to stop fighting prior to deploying the pepper spray; should have entered the room to secure the fighting inmates without resorting to use of pepper spray; and points to the amount of pepper spray on the floor of the dayroom as evidence of its over use. Plaintiff's contentions are without merit.

First, in the use of force reports and inmate rule violation notices created close in time to the incident, each of the responding officers stated that direct orders to stop fighting were given prior to use of the pepper spray. The video evidence demonstrates that the door slot was opened for seconds prior to the first burst of pepper spray being applied and was also open for seconds prior to additional deployment of pepper spray, bolstering staff reports that direct orders to stop fighting were given and ignored.  In any event, it is evident from the video that even after bursts of pepper spray were directed at the fighting inmates, they persisted in their altercation.

Second, nothing in the record suggests that correctional staff, faced with a large number of inmates in the dayroom as well as inmates unsecured on the tier, should have simply moved into the dayroom and used their bodies to thwart the attack of one inmate against the other. Moreover, the officers cannot be faulted for their quick response to what could have been a very dangerous situation.  That there were other approaches to resolving the fight is of no moment.  And, the amount of pepper spray on the floor is indicative of the inmates' persistence in fighting and recalcitrance in complying with orders to stop.

The uncontroverted evidence demonstrates that the officers gave directions to stop fighting, tempered their response by directing their chemical agent at the fighting inmates, stopped using pepper spray as soon as the inmates stopped fighting, and, as soon it was safe to do so, allowed the other inmates out of the dayroom to fresh air.  Nothing in the record before the court suggests that the amount of force used to stop the fighting was excessive or undertaken maliciously or in an effort to cause harm. "[O]nly the unnecessary *and wanton* infliction of pain implicates the Eighth Amendment."  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations in *Wilson*); *see Hixson*, 2021 WL 2460406, at *3.

Defendants are entitled to summary judgment.

### C.      Denial of Decontamination Shower

The parties dispute whether plaintiff asked for a decontamination shower. Even assuming that Pevia requested a shower and that defendant Price denied his request, as alleged, there is no information in the record that Price subjectively believed plaintiff was in need of a decontamination shower due to his second hand exposure to pepper spray, or that Price maliciously failed to allow one.

Moreover, plaintiff admits that he had access to water in his cell, and he and his cellmate were able to use the sink in their cell to take a "bird bath."  To be sure, Pevia contends that doing so was not as efficacious as if he had been able to take a shower.  But, the fact remains that he did have the ability to wash off the chemical agent in his cell.  Additionally, he also claimed in his ARP that he used milk to wash his skin.

The video evidence, as well as plaintiff's complaint, reveal that plaintiff was able to use his shirt, dipped in water, to shield his face from the full effects of the chemical agent. Further when plaintiff left the dayroom, he walked without incident down the hall, wiping his face with his shirt, unlike other inmates who were clearly overtaken by the chemical agent.

The court does not doubt that plaintiff had an unfortunate experience and was irritated by his exposure to pepper spray.  But, the Eighth Amendment is not implicated.  Pevia returned to his cell, where he had the ability to address his second hand exposure to the pepper spray, via washing in his sink. Defendants are entitled to summary judgment on this claim.

### IV.      Supervisory Defendants

Plaintiff names as defendants the Commissioner of Corrections and Warden Bishop. His claims as to these defendants are connected with their status as supervisors and, as to both

defendants, do not include allegations of personal participation in the alleged constitutional violations raised.

As noted, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Given the absence of any personal involvement by either the Commissioner of Corrections or Bishop Hill, they are entitled to dismissal of the case as to them.

### V.      Conclusion

Based on the foregoing, and by separate Order which follows, defendants' motion to dismiss or for summary judgment (ECF 9) is granted. The Complaint is dismissed as to the Commissioner of Corrections and Warden Bishop.  Summary judgment is granted in favor of

defendants Officers Eric Muir, Christine Reynolds, Carolyn Price, and Sergeant Anthony Koelker.[3]


September 6, 2022                              _____/s/_____
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[3] In light of the foregoing, defendants' additional defenses need not be considered.